# EXHIBIT 1

## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

Rafael Abreu,[1]                    No. 3:17-cv-2146-AWT

        Plaintiff,

v.

Scott Erfe
                                    Trial By Jury Demanded
Capt. Watson

Lt. McCarthy

C/o Feliciano

C/o Monson

C/o Wright

State Trooper Saez,

        Defendants.


## [PROPOSED] FIRST AMENDED COMPLAINT[2]

---

[1]    The Court has ordered the Clerk of the Court to correct the case caption to reflect the correct spelling of the plaintiff's last name:  Abreu, not Abreau.  *See* ECF No. 11 at 1-2, n.1.

[2]    Plaintiff files this [Proposed] First Amended Complaint to add allegations as to the claims asserted against defendant Watson only, which the Court dismissed pursuant to 28 U.S.C. §1915A(b)(1). *Id*. at 17-18, 20-25, 35-39. Plaintiff is not presently realleging any claims against defendants Erfe, McCarthy, Feliciano, Monson, Wright, or Saez that were dismissed either at the initial review stage or at summary judgment. ECF Nos. 11 and 42. The dismissed claims are preserved in this [Proposed] First Amended Complaint for purposes of appeal. The sole remaining claim against defendant Feliciano (Count Ten) is set for trial in April 2022.  ECF No. 73.

**NATURE OF PROCEEDING**

This is a civil rights action alleging that Capt. Watson sexually abused plaintiff and misused force on him and that Scott Erfe, Lt. McCarthy, c/o Feliciano, c/o Monson, c/o Wright, and State Trooper Saez acted with deliberate indifference toward plaintiff's safety and engaged in retaliatory conduct with the intent to discourage him from filing a complaint with the courts. Plaintiff seeks monetary, punitive, declaratory and injunctive relief.

**JURISDICTION AND VENUE**

1.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343, as the plaintiff's claims arise under 42 U.S.C. §§ 1983 and 1988, as well as the First, Eighth, and Fourteenth Amendments to the United States Constitution. The Court has supplemental subject matter jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367(a).

2.    Venue in this Court is proper pursuant to 28 U.S.C. § 1391(b)(2) as all of the events or omissions giving rise to the claims alleged herein occurred in this District. This Court is authorized to grant declaratory relief under 28 U.S.C. §§ 2201 and 2202.

**PARTIES**

3.    During the events alleged in this complaint, the plaintiff, Rafael Abreu, was incarcerated at Cheshire Correctional

2

Institution (herein after Cheshire) beginning in August 2016 for approximately nine months; he is presently incarcerated at MacDougall Walker Correctional Institution located at **1153 East Street, South, Suffield, CT. 06080.**

4.     Defendant Scott Erfe (Erfe), who served as the Warden at Cheshire during the time period of the events and omissions giving rise to the claims alleged herein, is being sued in his official and individual capacity.

5.     Defendant Capt. Watson (Watson) serves as Captain and Unit Manager at Cheshire and is being sued in his official and individual capacity.

6.     Defendant Lt. McCarthy (McCarthy) serves as Lieutenant at Cheshire and is being sued in her official and individual capacity.

7.     Defendant c/o Feliciano (Feliciano), who served as a Correctional Officer at Cheshire during the time period of the events and omissions giving rise to the claims alleged herein, is being sued in his official and individual capacity.

8.     Defendant c/o Monson (Monson) serves as a Correctional Officer at Cheshire and is being sued in his official and individual capacity.

9.     Defendant c/o Wright (Wright) serves as a Correctional Officer at Cheshire and is being sued in his official and individual capacity.

10.  Cheshire Correctional Institution is located at **900 Highland Avenue, Cheshire, CT. 06410.**

11.  Defendant State Trooper Saez (Saez) serves as a State Trooper at State Police Department, Troop I; and is being sued in his official and individual capacity.

12.  State Police Department Troop I is located at **631 Amity Road, Bethany, CT. 06525.**

### PREVIOUS LAWSUITS

13.  Plaintiff has filed no other lawsuit dealing with the same facts involved in this action.

### EXHAUSTION OF REMEDIES

14.  Plaintiff filed numerous grievances and complaints. All relief has been denied.

### STATEMENT OF FACTS

15.  During all times mentioned in this complaint, the defendants were acting under color of law and jointly and in concert with each other. Each defendant had the duty and the opportunity to protect the plaintiff from the unlawful action of the other defendants but each defendant failed and refused to perform such duty thereby proximately causing the damages herein complained of.

16.  Defendant Watson entered plaintiff's cell knowing plaintiff was naked and using the toilet and then groped and

fondled plaintiff's genitals for the purpose of sexual gratification and to humiliate plaintiff.

17.  On or about August 30, 2016, at approximately ten o'clock in the morning, plaintiff entered his cell (EB 2-21) to use the bathroom.

18.  As is customary, plaintiff placed a sign at lower portion of cell window indicating that he was using the bathroom.

19.  Defendant Watson ignored the sign and signaled defendant Monson who was posted at unit control to open the plaintiff's cell door exposing his nakedness to the other inmates across from his cell.

20.  Before he entered plaintiff's cell, defendant Watson knew plaintiff was using the toilet because, as stated, plaintiff had placed a privacy sign on the window of his cell door.  This is a customary practice when inmates are using the toilet.

21.  Before he entered plaintiff's cell, defendant Watson also knew plaintiff was fully naked and using the toilet because defendant Watson could see plaintiff through the window of the cell door.

22.  As soon as defendant Watson entered plaintiff's cell, plaintiff stood up, fully naked, from the toilet in surprise, shocked, humiliated, and embarrassed, and quickly attempted to pull up his pants.  But before plaintiff was able to cover himself, defendant Watson approached plaintiff and then groped and fondled

5

plaintiff's genitals for the purpose of his own sexual gratification and to humiliate and intimidate plaintiff. Defendant Watson said, "You're going to do what I want," while fondling plaintiff's genitals.

23. Plaintiff did not consent to this sexual contact. Plaintiff verbally rejected defendant Watson's advances, and defendant Watson then forcefully pushed plaintiff back down on the toilet in order to prevent him from covering himself.

24. Defendant Watson moved away from plaintiff and removed a coaxial cable from plaintiff's cell window, leering at plaintiff, who was still fully naked and sitting on the toilet, until he finally left plaintiff's cell.

25. The door to plaintiff's cell was partially open the entire time defendant Watson was inside plaintiff's cell.

26. Defendant Watson entered plaintiff's cell purportedly to confiscate a coaxial cable as contraband.  This was a pretext in order to observe plaintiff naked and on the toilet and then to grope and fondle plaintiff's genitals for defendant Watson's own sexual gratification and to humiliate and intimidate plaintiff.

27. Said cable was approved by the State of Connecticut Department of Correction ("DOC"), was not altered in any way or used in a manner proscribed by unit rules or policy.

28.   There was no penological purpose associated with this intentional touching of plaintiff's genitals.  This was not a pat and frisk.

29.   There were no emergency or exigent circumstances to justify defendant Watson's entry into plaintiff's cell and/or direct touching of plaintiff's genitals and verbally threatening him with further sexual abuse.

30.   Indeed, there was no penological reason for defendant Watson to touch plaintiff at all, much less to grope and fondle plaintiff's genitals.

31.   During and after the incident with defendant Watson, plaintiff was afraid for his safety.  Defendant Watson holds a position of authority as Captain and also is a physically imposing individual.  During the incident, plaintiff feared he was going to be further sexually or physically assaulted or raped by defendant Watson.

32.   After the incident and as a result of defendant Watson's conduct, plaintiff was physically violated and suffered severe emotional distress.  Plaintiff was in shock and in denial that he had been sexually assaulted.  He feared for his safety and that defendant Watson would sexually assault him again.  Plaintiff felt humiliated and ashamed.  While plaintiff reported the incident, he was unable to report the details of the sexual nature of defendant

Watson's conduct, fearing retaliation and retribution by defendant Watson and other correctional officers.

33.   To this day, plaintiff feels embarrassed, humiliated, and ashamed as a result of defendant Watson's conduct.

34.   According to the DOC's Administrative Directive 6.12 ("DOC AD 6.12"), titled Inmate Sexual Abuse/Sexual Harassment Prevention and Intervention (dated 7/20/2015), "The Department of Correction shall maintain a **zero tolerance policy** on inmate sexual abuse/ sexual harassment. All employees, inmates, contractors, volunteers, vendors and visitors shall be subject to this zero tolerance policy. Violations of the policy may result in administrative and/or criminal sanctions." (emphasis added).[3]

35.   DOC AD 6.12, ¶3.D defines "Exigent Circumstances" as "Any set of temporary and unforeseen circumstances that require immediate action in order to combat a threat to the security or institutional order of a facility."   The possession of a purportedly contraband coaxial cable does not constitute exigent circumstances as defined in DOC AD 6.12.

36.   DOC AD 6.12, ¶3.B defines "Abusive Sexual Contact" as "Contact of any person without his or her consent, or of a person who is unable to consent or refuse AND the intentional touching, either directly or through the clothing, of the genitalia, anus,

---

[3]      Available at https://portal.ct.gov/DOC/AD/AD-Chapter-6.

groin, breast, inner thigh, or buttocks of another person, without his or her consent, or of a person who is unable to consent or refuse; excluding incidents in which the intent of the contact is to harm or debilitate rather than to sexually exploit. Abusive sexual contact shall also include any unwanted and/or forced kissing and hugging."

37.  Defendant Watson's intentional, direct touching of plaintiff's genitals without plaintiff's consent, without penological purpose, for defendant Watson's own sexual gratification, and to humiliate and intimidate plaintiff constitutes Abusive Sexual Contact as defined in DOC AD 6.12.

38.  DOC AD 6.12, ¶3.L defines "Sexual Abuse" as follows:

"2)Sexual abuse of an inmate by a staff member, vendor, contractor, or volunteer includes any of the following acts, with or without consent of the inmate: . . .

(e) Any other intentional contact, either directly or through the clothing, of or with the genitalia, anus, groin, breast, inner thigh, or the buttocks, that is unrelated to official duties or where the staff member, contractor, or volunteer has the intent to abuse, arouse, or gratify sexual desire;

(f) Any attempt, threat, or request by a staff member, contractor, vendor or volunteer to engage

in   the   activities   described   in   paragraphs
(a)through (e) of this section; . . . and;

(h) Voyeurism by a staff member, contractor, vendor

or volunteer."

39.   DOC AD 6.12, ¶3.S defines "Voyeurism" as "An invasion of privacy of an inmate by staff for reasons unrelated to official duties, such as peering at an inmate who is using a toilet in his or her cell to perform bodily functions; requiring an inmate to expose his or her buttocks, genitals, or breasts; or taking images of all or part of an inmate's naked body or of an inmate performing bodily functions."

40.   Defendant Watson's conduct constitutes "Sexual Abuse" as defined in DOC AD 6.12, ¶3.L(2)(e), (f), and (h) and "Voyeurism" as defined in DOC AD 6.12, ¶3.S.

41.   Defendant Watson acted contrary to DOC AD 6.12, ¶3.L(2)(e) when he directly touched plaintiff's genitals outside the context of a pat and frisk without exigent circumstances and with the intent to satisfy his own sexual desires and to humiliate and intimidate plaintiff.

42.   Defendant Watson acted contrary to DOC AD 6.12, ¶3.L(2)(f) when he verbally threatened plaintiff with continued and/or further sexual abuse, telling plaintiff "You're going to do what I want," while fondling plaintiff's genitals.

43. Defendant Watson acted contrary to DOC AD 6.12, ¶3.L(2)(h) and ¶3.S and invaded plaintiff's privacy when he: (a) entered plaintiff's cell knowing he was naked and using the toilet; (b) forced plaintiff to expose his genitals while plaintiff was using the toilet and performing bodily functions; (c) leered at plaintiff while he was sitting naked on the toilet while defendant Watson confiscated the coaxial cable; and (d) allowed other inmates to view plaintiff's genitals while he was performing bodily functions when defendant Watson (i) entered plaintiff's cell knowing plaintiff was naked and using the toilet and then left the cell door partially open; and (ii) prevented plaintiff from covering himself while the cell door was open. These actions were unrelated to defendant Watson's official duties because (a) there were no exigent circumstances; (b) this was not a pat and frisk; and (c) defendant Watson intended to satisfy his own sexual desires and to humiliate and intimidate plaintiff.

44. Plaintiff reported the actions of defendant Watson to second shift supervisor, defendant McCarthy who dismissed plaintiff's complaint claiming that defendant Watson had acted within the scope of his duties.

45. Two days later defendant McCarthy returned to plaintiff's cell slid various documents under his door and told plaintiff that he was not protected by P.R.E.A. because he is an immigrant.

46. On September 9, 2016 the plaintiff reported the actions of defendant Watson to a Mental Health Social Worker, Debbie, L.P.C.; who in turn contacted Capt. Nunez and had plaintiff moved to another unit for safety reasons. (See Exhibit A)

47. Shortly after, Capt. Nunez spoke with plaintiff about the possibility of resolving the issue with defendant Watson without involving the courts. The plaintiff declined his offer.

48. To ensure that all remedies were exhausted, plaintiff submitted an informal complaint to defendant Erfe alleging that on August 30, 2016, defendant Watson committed various P.R.E.A. violations at his cell. Defendant Erfe never responded to his complaint.

49. Plaintiff's attorney Peter Tsimbadaro also attempted to contact defendant Erfe to no avail as defendant Erfe failed to return any of Tsimbadaro's calls and faxes.

50. Soon thereafter, the plaintiff filed a formal complaint against defendant Watson. (See Exhibit B).

51. After the filing of complaints, certain c/o's started retaliating against the plaintiff.

52. Specifically, on October 3, 2016 while on his way to the gym, plaintiff was stopped by defendants: Feliciano and Monson who confiscated plaintiff's hair band and accused him of possessing contraband.

53. Even though the plaintiff explained that he had purchased the hair band during his previous years of incarceration, defendant Feliciano still issued him a Class B disposition.

54. After a hearing, plaintiff was found guilty and various sanctions were imposed on him.

55. When it became apparent that defendants: Erfe, Watson, McCarthy, Feliciano and Monson were conspiring against him, the plaintiff submitted a letter to population management requesting to be transferred to another facility because he feared for his safety. (See Exhibit C).

56. Plaintiff also submitted a letter to the State Police Department complaining about the actions of all of the aforementioned defendants. In response, the State Police Department delegated defendant Saez to investigate the incident.

57. Defendant Saez sided with defendants: Erfe, Watson, McCarthy, Feliciano and Monson. And refused to adequately investigate the facts surrounding plaintiff's allegations; and also refused to file an official complaint telling the plaintiff that "no harm was done."

58. Because the plaintiff was adamant about complaining against defendant Watson, he was taken to Restrictive Housing Unit (R.H.U.) on January 5, 2017 on allegations that he had tampered with security.

59.  In a Class A disposition, defendant Wright alleged that the plaintiff was on a three way telephone call merely because he was conversing with three people at the same time. When plaintiff's sons's mother owns a landline with three telephone lines in her home.

60.  The next day—January 6--plaintiff was issued another Class A disposition by defendant Wright. This time alleging that the plaintiff had stolen a chain from another inmate when in fact the chain had been found by him on a table at R.H.U. outside recreation area.

61.  Plaintiff was found guilty of both tampering with security (with respect to the alleged three way call) and theft (with respect to the alleged stolen chain).

62.  Plaintiff was given various sanctions which included thirty days at R.H.U.

63.  During his time at R.H.U., the plaintiff was denied his daily one hour recreation and also began to experience nose bleeds.

64.  The nurse at Medical told him that his nose bleeds were due to poor ventilation at R.H.U.

65.  Plaintiff immediately wrote to defendant Erfe complaining that he was experiencing nose bleeds due to poor ventilation at R.H.U. and also that he was being denied his one hour daily outside recreation.

66.  Plaintiff's complaint to defendant Erfe went ignored.

67.  A month after plaintiff was released from R.H.U. he was once more called to Capt. Nunez' office to discuss the possibility of resolving the issue with defendant Watson outside of the courts. Plaintiff, again, declined his offer.

<u>LEGAL CLAIMS[4]</u>

**COUNT ONE:     EIGHTH  AMENDMENT  OF  THE  U.S.  CONSTITUTION  –
DELIBERATE  INDIFFERENCE/SEXUAL  ABUSE  IN  VIOLATION  OF  42  U.S.C.
§1983 (against DEFENDANT WATSON in his official and individual
capacity)**

68.  Paragraphs 1 through 67 of this complaint are hereby incorporated by reference.

69.  Defendant Watson's conduct alleged in the foregoing paragraphs, where defendant Watson intentionally groped and fondled plaintiff's genitals outside the context of a pat and frisk and without exigent circumstances with the intent of sexually gratifying himself and humiliating and intimidating plaintiff, thus constituted deliberate indifference to plaintiff's health and safety and conditions of confinement in violation of the Eighth Amendment of the U.S. Constitution.

70.  As a direct and proximate result of defendant Watson's conduct, plaintiff sustained the injuries and damages previously described herein.

---

[4]     For purposes of this [Proposed] First Amended Complaint, Plaintiff is re-alleging Counts One and Four only.

71.  Plaintiff understands that other inmates have had similar encounters with defendant Watson.  Plaintiff continues to fear, if defendant Watson and plaintiff are present in the same correctional facility in the future, that defendant Watson will sexually assault plaintiff again.  Plaintiff therefore will be subject to irreparable harm — being sexually assaulted again — if an injunction is not granted preventing plaintiff from being transferred back to the same correctional facility in which defendant Watson works in the future.  Plaintiff also lacks an adequate remedy at law in that monetary damages cannot fully compensate plaintiff for the physical and emotional harm that would result should defendant Watson sexually assault him again.

72.  Defendant Watson sexually assaulted plaintiff, and thus, was deliberately indifferent to plaintiff's health and safety and conditions of confinement, which establishes a cause of action for monetary relief consisting of compensatory damages, punitive damages, injunctive relief, and costs (including attorneys' fees) to plaintiff.

**COUNT TWO:       VOYEURISM (P.R.E.A. VIOLATION)(against DEFENDANT WATSON)**

73.  Paragraphs 1 through 67 of this complaint are hereby incorporated by reference.

74.  The plaintiff further claims that:

16

Defendant Watson committed voyeurism insofar as he kept staring at him as he sat naked on the toilet.

**COUNT THREE:   MISUSE OF FORCE (against DEFENDANT WATSON)**

75. Paragraphs 1 through 67 of this complaint are hereby incorporated by reference.

76. The plaintiff claims that:

Defendant Watson misused force on him insofar as he forcefully pushed him back down on the toilet to prevent him from covering his naked body.

**COUNT FOUR:     STATE LAW CLAIMS (against DEFENDANT WATSON in his official and individual capacity)**

   **COUNT FOUR(A): ASSAULT (against DEFENDANT WATSON in his official and individual capacity)**

77. Paragraphs 1 through 72 of this complaint are hereby incorporated by reference.

78. Defendant Watson's actions alleged in the foregoing paragraphs intentionally caused plaintiff imminent apprehension of harmful and offensive contact by defendant Watson, without legal justification, which constituted an assault.

79. At all relevant times mentioned herein this complaint, defendant Watson, acted outside of the scope of his employment and his duties and jurisdiction, and acted willfully, knowingly, maliciously, and purposefully, with the intent to humiliate and intimidate plaintiff, physically and sexually violate plaintiff,

17

and sexually gratify himself.  By his conduct, Defendant Watson exhibited reckless disregard for plaintiff's rights and safety and for the consequences of his actions.

80.  As a direct and proximate result of the assault by Defendant Watson, plaintiff sustained the injuries and damages previously described herein.

81.  Plaintiff understands that other inmates have had similar encounters with defendant Watson.  Plaintiff continues to fear, if defendant Watson and plaintiff are present in the same correctional facility in the future, that defendant Watson will sexually assault plaintiff again.  Plaintiff therefore will be subject to irreparable harm — being sexually assaulted again — if an injunction is not granted preventing plaintiff from being transferred back to the same correctional facility in which defendant Watson works in the future.  Plaintiff also lacks an adequate remedy at law in that monetary damages cannot fully compensate plaintiff for the physical and emotional harm that would result should defendant Watson sexually assault him again.

82.  Defendant Watson committed an assault against plaintiff, which establishes a cause of action for monetary relief consisting of compensatory damages, injunctive relief, punitive damages, and costs to plaintiff.

**COUNT 4(B): BATTERY (against DEFENDANT WATSON in his official and individual capacity)**

83. Paragraphs 1 through 72, 77-82 of this complaint are hereby incorporated by reference.

84. Defendant Watson's actions alleged in the foregoing paragraphs constituted an intentional, unlawful, unwanted, and harmful touching, without legal justification, which constituted a battery.

85. Defendant Watson intended to cause a harmful or offensive contact with plaintiff, which directly resulted in the intentional harmful and offensive touching.

86. At all relevant times mentioned herein this complaint, defendant Watson, acted outside of the scope of his employment and his duties and jurisdiction, and acted willfully, knowingly, maliciously, and purposefully, with the intent to humiliate and intimidate plaintiff, physically and sexually violate plaintiff, and sexually gratify himself. By his conduct, Defendant Watson exhibited reckless disregard for plaintiff's rights and safety and for the consequences of his actions.

87. As a direct and proximate result of the battery by Defendant Watson, plaintiff sustained the injuries and damages previously described herein.

88. Plaintiff understands that other inmates have had similar encounters with defendant Watson. Plaintiff continues to

fear, if defendant Watson and plaintiff are present in the same correctional facility in the future, that defendant Watson will sexually assault plaintiff again, constituting battery. Plaintiff therefore will be subject to irreparable harm — being sexually assaulted and subject to battery again — if an injunction is not granted preventing plaintiff from being transferred back to the same correctional facility in which defendant Watson works in the future. Plaintiff also lacks an adequate remedy at law in that monetary damages cannot fully compensate plaintiff for the physical and emotional harm that would result should defendant Watson sexually assault him again.

89. Defendant Watson committed a battery against plaintiff, which establishes a cause of action for monetary relief consisting of compensatory damages, injunctive relief, punitive damages, and costs to plaintiff.

**COUNT 4(C): INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS (against DEFENDANT WATSON in his official and individual capacity)**

90. Paragraphs 1 through 72, 77-89 of this complaint are hereby incorporated by reference.

91. By defendant Watson's actions alleged in the foregoing paragraphs, defendant Watson intended to inflict emotional distress or knew or should have known that emotional distress was a likely result of his conduct.

92. Defendant Watson's actions alleged in the foregoing paragraphs constituted extreme and outrageous conduct. Defendant Watson's conduct, which was in violation of established DOC policy meant to prevent the exact harm plaintiff suffered, goes well beyond the bounds of decency. Further, because there were no exigent circumstances and this was not a pat and frisk situation, defendant Watson's conduct was calculated to cause, and did cause, plaintiff serious emotional distress.

93. At all relevant times mentioned herein this complaint, defendant Watson, acted outside of the scope of his employment and his duties and jurisdiction, and acted willfully, knowingly, maliciously, and purposefully, with the intent to humiliate and intimidate plaintiff, physically and sexually violate plaintiff, and sexually gratify himself. By his conduct, Defendant Watson exhibited reckless disregard for plaintiff's rights and safety and for the consequences of his actions.

94. Defendant Watson's actions alleged in the foregoing paragraphs did cause plaintiff emotional distress that was severe, as alleged above.

95. As a direct and proximate result of the intentional infliction of emotional distress by Defendant Watson, plaintiff sustained the injuries and damages previously described herein.

96. Plaintiff understands that other inmates have had similar encounters with defendant Watson. Plaintiff continues to

fear, if defendant Watson and plaintiff are present in the same correctional facility in the future, that defendant Watson will sexually assault plaintiff again, constituting intentional infliction of emotional distress. Plaintiff therefore will be subject to irreparable harm — being sexually assaulted and subjected to intentional infliction of emotional distress again — if an injunction is not granted preventing plaintiff from being transferred back to the same correctional facility in which defendant Watson works in the future. Plaintiff also lacks an adequate remedy at law in that monetary damages cannot fully compensate plaintiff for the physical and emotional harm that would result should defendant Watson sexually assault him again.

97. Defendant Watson's intentional infliction of emotional distress as to plaintiff establishes a cause of action for monetary relief consisting of compensatory damages, injunctive relief, punitive damages, and costs to plaintiff.

**COUNT FIVE: DELIBERATE INDIFFERENCE (against DEFENDANT MCCARTHY)**

98. Paragraphs 1 through 67 of this complaint are hereby incorporated by reference.

99. The plaintiff claims that:

Defendant McCarthy acted with deliberate indifference to his safety insofar as she dismissed his sexual abuse complaint against

defendant Watson; and refused to investigate the facts surrounding plaintiff's allegations.

**COUNT SIX:     DISCRIMINATION (against DEFENDANT MCCARTHY)**

100. Paragraphs 1 through 67 of this complaint are hereby incorporated by reference.

101. The plaintiff further claims that:

Defendant McCarthy engaged in discriminatory conduct insofar as she refused to protect him from the unlawful actions of defendant Watson because of his status as an immigrant.

**COUNT SEVEN:     BREACH OF DUTY (against DEFENDANT MCCARTHY)**

102. Paragraphs 1 through 67 of this complaint are hereby incorporated by reference.

103. The plaintiff claims that:

At all relevant times mentioned herein this complaint, defendant McCarthy, acted outside of the scope of her duties and jurisdiction, nevertheless acted willfully, knowingly, maliciously, and purposefully, with the intent to deprive the plaintiff of his rights to Protected speech, his rights against Cruel and unusual punishment and his rights against Discrimination under the First, Eighth, and Fourteenth Amendments to the United States Constitution.

**COUNT EIGHT:     DELIBERATE INDIFFERENCE (against DEFENDANT ERFE)**

104. Paragraphs 1 through 67 of this complaint are hereby incorporated by reference.

23

105. The plaintiff further claims that:

Defendant Erfe acted with deliberate indifference to plaintiff's safety when he refused to protect plaintiff against the actions of defendant Watson and refused to act upon information indicating that plaintiff was experiencing nose bleeds due to poor ventilation at R.H.U. and that he was being denied his daily one hour recreation.

**COUNT NINE:       BREACH OF DUTY (against DEFENDANT ERFE)**

106. Paragraphs 1 through 67 of this complaint are hereby incorporated by reference.

107. The plaintiff claims that:

At all relevant times mentioned herein this complaint, defendant Erfe, acted outside of the scope of his duties and jurisdiction, nevertheless acted willfully, knowingly, maliciously, and purposefully, with the intent to deprive the plaintiff of his rights to protected speech, his rights against Cruel and unusual punishment and his rights against Discrimination under the First, Eighth, and Fourteenth Amendments to the United States Constitution.

**COUNT TEN:       RETALIATION (against DEFENDANT FELICIANO)**

108. Paragraphs 1 through 67 of this complaint are hereby incorporated by reference.

24

109. The plaintiff further claims that:

Defendant Feliciano engaged in retaliatory conduct insofar as when, after the plaintiff filed complaints against defendant Watson, he began to harass him for trivial reasons, falsely accused him of possessing contraband and generated false evidence at hearing that resulted in plaintiff's guilty finding and imposition of various sanctions.

**COUNT ELEVEN:        BREACH OF DUTY (against DEFENDANT FELICIANO)**

110. Paragraphs 1 through 67 of this complaint are hereby incorporated by reference.

111. The plaintiff claims that:

At all relevant times mentioned herein this complaint, defendant Feliciano, acted outside of the scope of his duties and jurisdiction, nevertheless acted willfully, knowingly, maliciously and purposefully, with the intent to deprive the plaintiff of his rights to Protected speech, his rights against Cruel and unusual punishment and his rights against Discrimination under the First, Eighth, and Fourteenth Amendments to the United States Constitution.

**COUNT TWELVE:        RETALIATION (against DEFENDANT MONSON)**

112. Paragraphs 1 through 67 of this complaint are hereby incorporated by reference.

113. The plaintiff further claims that:

Defendant Monson engaged in retaliatory conduct insofar as when, after the plaintiff filed complaints against defendant Watson, he started to harass him for trivial reasons, falsely accused him of possessing contraband and generated false evidence at hearing that resulted in a guilty finding and various sanctions imposed.

**COUNT THIRTEEN:     BREACH OF DUTY (against DEFENDANT MONSON)**

114. Paragraphs 1 through 67 of this complaint are hereby incorporated by reference.

115. The plaintiff claims that:

At all relevant times mentioned herein this complaint, defendant Monson acted outside of the scope of his duties and jurisdiction, nevertheless acted willfully, knowingly, maliciously, and purposefully with the intent to deprive the plaintiff of his rights to Protected speech, his rights against Cruel and unusual punishment, and his rights against Discrimination under the First, Eighth and Fourteenth Amendments to the United States Constitution.

**COUNT FOURTEEN:     RETALIATION (against DEFENDANT WRIGHT)**

116. Paragraphs 1 through 67 of this complaint are hereby incorporated by reference.

117. The plaintiff further claims that:

Defendant Wright engaged in retaliatory conduct insofar as, after plaintiff filed complaints against defendant Watson, he falsely accused him of tampering with security and theft; and generated false evidence at hearing which resulted in a guilty finding and various sanctions.

**COUNT FIFTEEN:        BREACH OF DUTY (against DEFENDANT WRIGHT)**

118. Paragraphs 1 through 67 of this complaint are hereby incorporated by reference.

119. The plaintiff claims that:

At all relevant times mentioned herein this complaint, defendant Wright, acted outside of the scope of his duties and jurisdiction, nevertheless acted willfully, knowingly, maliciously and purposefully, with the intent to deprive the plaintiff of his rights to Protected speech, his rights against Cruel and unusual punishment, and his rights against Discrimination under the First, Eighth, and Fourteenth Amendments to the United States Constitution.

**COUNT SIXTEEN:        DELIBERATE INDIFFERENCE (against DEFENDANT SAEZ)**

120. Paragraphs 1 through 67 of this complaint are hereby incorporated by reference.

27

121. The plaintiff further claims that:

Defendant Saez acted with deliberate indifference to plaintiff's safety insofar as he dismissed plaintiff's complaint against defendant Watson and the rest of the aforementioned defendants, aligned himself with all of the aforementioned defendants, refused to adequately investigate the facts surrounding plaintiff's allegations and refused to file an official complaint.

**COUNT SEVENTEEN:       BREACH OF DUTY (against DEFENDANT SAEZ)**

122. Paragraphs 1 through 67 of this complaint are hereby incorporated by reference.

123. The plaintiff claims that:

At all relevant times mentioned herein this complaint, defendant Saez, acted outside of the scope of his duties and jurisdiction, nevertheless acted willfully, knowingly, maliciously and purposefully, with the intent to deprive the plaintiff of his rights to Protected speech, his rights against Cruel and Unusual punishment and his rights against Discrimination under the First, Eighth, and Fourteenth Amendments to the United States Constitution.

## **REQUEST FOR RELIEF**

124. Paragraphs 1 through 123 of this complaint are hereby incorporated by reference.

125. Wherefore, the plaintiff, Rafael Abreu, demands judgment in his favor against all of the aforementioned defendants by declaring their actions described herein illegal and injunctive relief, as described herein. Wherefore the plaintiff requests that the Court grant the following relief:

A. Award Compensatory Damages in the Following Amounts:

a.   $150,000 against defendant Watson, or in such greater amount to be determined at trial.

b.   $50,000 jointly and severally against defendants: Erfe, McCarthy, Feliciano, Monson, Wright, and Saez, or in such greater amount to be determined at trial.

B. Award Punitive Damages in an amount to be determined at trial.

C.   Costs, including attorneys' fees in connection with the federal civil rights claims, and pre-judgment interest.

D.   Grant Such Other Relief as it may appear that the plaintiff is entitled.

## JURY TRIAL DEMANDED

126. Plaintiff demands that all issues of fact of this case be tried to a properly impaneled jury to the extent permitted under the law.

DATED:  November 19, 2021          RESPECTFULLY SUBMITTED:

THE PLAINTIFF,

s/ *Erin Comite*
Erin Comite
Bar No. 420630
**SCOTT+SCOTT**
**ATTORNEYS AT LAW LLP**
156 South Main Street
P.O. Box 192
Colchester, CT 06415
Phone: 860-537-5537
Fax: 860-537-4432
Email: ecomite@scott-scott.com

*Court-Appointed Pro Bono Counsel
for Plaintiff*

Rafael Abreu #305514
MacDougall-Walker C.I.
1153 East Street, South
Suffield, CT 06080

**CERTIFICATE OF SERVICE**

I, Erin Comite, hereby certify that a true copy of the above document was served upon the attorney of record for each other party through the Court's electronic filing service on November 19, 2021.

s/ Erin Comite
Erin Comite