UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

```
------------------------------ x
RAFAEL ABREU,                  :
                               :
         Plaintiff,            :
                               :
v.                             :   Civil No. 3:17-cv-2146(AWT)
                               :
SCOTT ERFE, ASHLEY McCARTHY, and :
JOSE FELICIANO,                :
                               :
         Defendants.           :
------------------------------ x
```

### RULING ON MOTION FOR LEAVE TO AMEND COMPLAINT

The plaintiff has moved for leave to file an amended complaint. For the reasons set forth below, the motion is being denied.

**I.   Factual Background**

The plaintiff filed a Complaint on December 22, 2017. He brought claims against a number of defendants. At issue in the instant motion is the claim regarding actions by former defendant Captain Watson on August 30, 2016. In the Inmate Administrative Remedy Form, in the box that directed the plaintiff to "[p]rovide any factual information that is applicable," the plaintiff wrote:

> CN-9601 written to the warden not attached. I never got a response on 8/30/16[.] I locked up in the cell after rec at 10:00 am EB2-21 cell. I [immediately] sat on the toilet because I needed to take a #2. I even had a bathroom sign up at the door that covered the window half way[.] [Five] to [ten] minutes later[,] while I was on the toilet[,] my cell door opens[.] I stood up naked

-1-

> and at the door is Captain Watson[.] I told him can you please close the door I['] m using the bathroom[.] **[H]e walked in[,] pushed me by my shoulder back on to the toilet [and] walked to the back of the cell looking at me up and [down].** The whole time there he began to unscrew my coaxial cable off of my TV. He's standing [there] unscrewing my coaxial **and at the same time looking at me while I'm naked.** When he was done unscrewing the coaxial[,] as he's leaving the cell he's looking down at me[.] [H]e leaves [and] takes my coaxial **without saying a word.**
>
> Since Captain Watson is the unit administrator I waited to [second] shift to report the incident. I reported it to Lt. [McCarthy] in which she said he did nothing wrong. (Directive 2.17 B-17) prohibits this kind of behavior. (Directive 2.2) protects me from this kind of behavior. (2.17-8). This is a clear violation of employee conduct[.] **[M]y lawyer already called to preserve video images[,] and I have witnesses.**
>
> Requested resolution – Captain Watson should be held accountable for his actions and punished according to his violations.

Compl. at 23, ECF No. 1 (emphasis added).

In the complaint, the plaintiff alleged in pertinent part:

> On or about August 30, 2016 at approximately ten o'clock in the morning, plaintiff entered his cell (EB 2-21) to use the bathroom.
>
> As is customary, plaintiff placed a sign at lower portion of cell window indicating that he was using the bathroom.
>
> Defendant Watson ignored the sign and signaled defendant Monson who was posted at unit control to open the plaintiff's cell door exposing his nakedness to the other inmates across from his cell.
>
> Plaintiff quickly attempted to pull up his pants but before he was able to [defendant] Watson forcefully pushed him back down on the toilet in order to prevent him from covering himself. Defendant Watson, then,

walked past him and removed a [coaxial] cable from plaintiff'[]s cell window all the while staring at the plaintiff who was naked sitting on the toilet.

Id. at ¶¶ 16-19.

In Count One, a claim against Captain Watson for deliberate indifference, the plaintiff alleged:

> Defendant Watson acted with deliberate indifference to plaintiff's safety insofar as he had his cell door open notwithstanding that he knew plaintiff was using the bathroom, used force to prevent him from covering his naked body and exposed his nakedness to other inmates— merely to remove a [coaxial] from his window—reasons unrelated to safety and security.

Id. at ¶ 46.

In Count Two, a Prison Rape Elimination Act (PREA) claim against Captain Watson for voyeurism, the plaintiff alleged that "Defendant Watson committed voyeurism insofar as he kept staring at [the plaintiff] as [the plaintiff] sat naked on the toilet." Id. at ¶ 48.

In Count Three, a claim against Captain Watson for misuse of force, the plaintiff alleged that "Defendant Watson misused force on him insofar as he forcefully pushed him back down on the toilet to prevent him from covering his naked body." Id. at ¶ 50.

In Count Four, a claim against Captain Watson for breach of duty, the plaintiff alleged:

> At all relevant times mentioned herein this complaint, defendant Watson, acted outside of the scope of his duties and jurisdiction, nevertheless acted willfully,

> knowingly, maliciously, and purposefully, with the intent to deprive the plaintiff of his rights against cruel and unusual punishment under the Eighth Amendment to the United States Constitution; and his rights against sexual abuse under Federal and State law (P.R.E.A.).

Id. at ¶ 52.

In the Initial Review Order, which was filed on June 5, 2018, the court dismissed the plaintiff's Eighth Amendment claim against Captain Watson. In doing so, the court noted:

> In Crawford v. Cuomo, 796 F.3d 252 (2d Cir. 2015), the Second Circuit clarified its holding in Boddie with respect to sexually assaultive searches. The court held that "a corrections officer's intentional contact with an inmate's genitalia or other intimate area, which serves no penological purpose and is undertaken with the intent to gratify the officer's desire or to humiliate the inmate, violates the Eight Amendment." Id. at 257. . . . [T]he plaintiff alleges that Captain Watson entered his cell to confiscate a coaxial cable as contraband and, in the process, observed him on toilet in a semi-clothed state.

Initial Review Order, at 16, 17, ECF No. 11.

The defendants filed a motion to dismiss and, in his September 10, 2018 objection to that motion to dismiss, the plaintiff acknowledged that the court had dismissed the claims against Captain Watson. See Mem. Law Supp. Pl.'s Obj. Defs.' Mot. Dismiss, at 2, ECF No. 25. In that memorandum, the pro se plaintiff also demonstrated that he understands the concept of pleading sufficient facts to support a claim. With respect to his claim against defendant Scott Erfe, he wrote:

> Here, not only do the defendants misconstrue plaintiff's claim against Erfe but have also misconstrued this [c]ourt's characterization of this claim in its Initial Review Order. No where in the complaint does the plaintiff ever allege that he was denied access to exercise but that he was deprived of a basic human need: fresh air, which resulted in nosebleeds.

Id. at 4.

The defendants also moved for summary judgment, and the plaintiff filed an opposition pro se on April 29, 2019. He once again acknowledged that the claims against Captain Watson had been dismissed. See Mem. Law Supp. Pl.'s Obj. Defs.' Mot. for Summ. J. at 1-2, ECF No. 37-1.

**II. Legal Standard**

Under Federal Rule of Civil Procedure 15(a)(2), "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). "[W]hen addressing a pro se complaint, a district court should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." Thompson v. Carter, 284 F.3d 411, 416 (2d Cir. 2002) (citations and internal quotation marks omitted). However, "[l]eave to amend, though liberally granted, may properly be denied for: 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure

deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.'" Ruotolo v. City of New York, 514 F.3d 184, 191 (2d Cir. 2008) (quoting Foman v. Davis, 371 U.S. 178, 182 (1962).

### III. Discussion

The motion for leave to amend is being denied first, because the amendment would be "futil[e]," and second, because of the combination of "undue delay" on the part of the plaintiff and "undue prejudice" to the former defendant Captain Watson. Foman, 371 U.S. at 182.

#### A.   Futility

The proposed amendment would be futile because the plaintiff did not exhaust his administrative remedies with respect to the claim that Captain Watson sexually assaulted him. The factual information in the grievance relates to the plaintiff's claims in Count One and Count Three that Watson forcibly pushed him back down onto the toilet to prevent him from covering his naked body, and to his claim in Count Two that Watson engaged in voyeurism because he kept staring at the plaintiff. For these reasons, the factual information also relates to the plaintiff's claim in Count Four. But while the factual information in the grievance relates to claims that there was an assault (in the form of a forcible push), and

-6-

relates to a claim of voyeurism (which has a sexual overtone), nothing in the factual information included in the grievance conveys that there was a sexual assault. Not until the instant proposed amendment to the complaint does the plaintiff ever assert that Captain Watson groped and fondled the plaintiff's genitals.

The plaintiff contends that he exhausted his administrative remedies because the incident with Captain Watson was investigated and the proposed amendment is merely an "amplification of what occurred during the incident with Captain Watson." Reply Mem. Law. Supp. Pl.'s Mot. Leave File Am. Compl. at 5, ECF No. 85. Whether the plaintiff's proposed amendment is merely an "amplification" of his prior grievance turns on whether the content of his grievance put the defendants on notice of the plaintiff's claim that he was sexually assaulted.

> The PLRA's exhaustion requirement is designed to "afford [ ] corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." Porter v. Nessle, 534 U.S. 516, 524-25 (2002). As such, it is not dissimilar to the rules of notice pleading, which prescribe that a complaint "must contain allegations sufficient to alert the defendants to the nature of the claim and to allow them to defend against it." Freedom Holdings, Inc. v. Spitzer, 357 F.3d 205, 234 (2d Cir. 2004). Thus, the Seventh Circuit has held that, if prison regulations do not prescribe any particular content for inmate grievances, "a grievance suffices if it alerts the prison to the nature of the wrong for which redress is sought. As in a notice pleading system, the grievant need not lay out the facts, articulate legal theories, or demand particular relief. All the grievance need do

>is object intelligibly to some asserted shortcoming." <u>Strong v. David</u>, 297 F.3d 646, 650 (7th Cir. 2002)
>
>We believe that this formulation is a sound one. Uncounselled inmates navigating prison administrative procedures without assistance cannot be expected to satisfy a standard more stringent than that of notice pleading. Still, the PLRA's exhaustion requirement does require that prison officials be "afford[ed] . . . time and opportunity to address complaints internally." <u>Porter</u>, 534 U.S. at 524–25. In order to exhaust, therefore, inmates must provide enough information about the conduct of which they complain to allow prison officials to take appropriate responsive measures.

<u>Johnson v. Testman</u>, 380 F.3d 691, 697 (2d Cir. 2004).

However, there is no language in the grievance that could be construed as even suggesting that Watson groped and fondled the plaintiff's genitals or did anything equivalent to that. To the contrary, because the grievance appears to state what happened in detail, the grievance suggests that nothing else happened, particularly since the plaintiff was instructed to provide "any factual information that is applicable." Compl. at 23. The grievance conveys that Watson pushed the plaintiff by his shoulder and that Watson kept staring at the plaintiff while the plaintiff was naked. As <u>Crawford v. Cuomo</u> makes clear, a claim that "a corrections officer[] [made] intentional contact with an inmate's genitalia or other intimate area," 796 F.3d at 257, is materially different from the facts stated in the plaintiff's grievance.

The newly asserted facts are the essential facts that are at the core of the proposed cause of action. With those facts, there is a cause of action; without them there is no cause of action. In such a situation, it is not accurate to describe those facts as amplifying what occurred during the incident. They are, for purposes of making a grievance and bringing a cause of action, the essence of the incident because they are the material conduct on which the legal claim is based. Consequently, the grievance does not "contain allegations sufficient to alert the defendants to the nature of the claim and to allow them to defend against it." Johnson, 380 F.3d at 697 (citations and internal quotation marks omitted). See also Johnson v. Annucci, 314 F. Supp. 3d 472, 476 (W.D.N.Y. 2018) ("[Grievances that] cannot be said to have put defendants on notice of the nature of plaintiff's complaint, nor would the prison authorities reasonably be expected to treat them as raising the issues forming the basis for [an] action . . . [are] insufficient to meet the [PLRA's] exhaustion requirement."). Also, it is apparent from the allegations in the complaint that the correctional officers here did not receive notice of the nature of the plaintiff's grievance. In paragraph 21 of the complaint, the plaintiff alleges that he "reported the actions of defendant Watson to second shift supervisor, defendant McCarthy who dismissed plaintiff's complaint claiming that

defendant Watson had acted within the scope of his duties." Compl. at ¶ 21. Such a response is inconsistent with the plaintiff having conveyed to correctional officials that he had been sexually assaulted by Captain Watson.

Because "[c]laims relating to matters that are outside the scope of [an] inmate's grievance . . . are not exhausted for purposes of the PLRA," Allah v. Poole, 506 F. Supp. 2d 174, 180 (W.D.N.Y. 2007), the proposed amendment would be futile.

**B.   Undue Delay Resulting in Undue Prejudice**

The leave to amend should also be denied because of the plaintiff's undue delay, which would result in undue prejudice to Captain Watson. The plaintiff's delay here is undue because the incident occurred on August 30, 2016 and he filed his grievance on September 21, 2016, having been put on notice that he had to state all of the factual information that is applicable. The reported incident with Captain Watson was investigated, and the denial of the grievance was appealed. But during that investigation and the administrative review process, neither Captain Watson nor the people conducting the investigation and the administrative review were aware that there was any claim that Watson had "groped and fondled plaintiff's genitals." Proposed First. Am. Compl. at ¶¶ 16, 22, 69, ECF No. 80-2. Then the plaintiff filed his complaint in this action in December 2017, again alleging no facts that would

suggest that Captain Watson had "groped and fondled plaintiff's genitals." Id. The court issued a lengthy initial review order in which it stated that the plaintiff had not alleged any facts "to suggest that Captain Watson entered the cell with the intent to gratify himself," Initial Review Order, at 17-18, and the plaintiff never informed the court that that was not so. In September 2018 and again in April 2019, the plaintiff made filings referencing the dismissed claims against Captain Watson, but never asserted that there were additional facts that had not been considered. Only in late 2021 did the plaintiff make such an assertion.

The court notes that the plaintiff contends that his failure to raise this issue sooner should be excused because the plaintiff was not provided notice and opportunity to amend curable deficiencies in the complaint, which is frequently afforded to pro se plaintiffs in this district. See Mem. Law Supp. Pl.'s Mot. Leave File Am. Compl. at 2, ECF No. 80-1 ("Plaintiff Was Not Previously Provided Notice and an Opportunity to Amend Curable Deficiencies in the Complaint, Which Is Frequently Afforded to Pro Se Plaintiffs in This District"). Pro se plaintiffs in this district are routinely notified of curable deficiencies in the complaint. However, although "[a] pro se complaint is to be read liberally," Cuoco v. Moritsugu, 222 F.3d 99, 112 (2d Cir. 2000) (citations and

-11-

internal quotation marks omitted), nothing in the complaint suggested that there was a curable deficiency. The plaintiff did not simply make a conclusory statement that he had been sexually assaulted without providing details. There is no vagueness or ambiguity with respect to the plaintiff's factual assertions, either in his grievance or in the complaint. Rather, he gave specific details, which made it clear that he had not been sexually assaulted. It is not the proper function of the court to inquire whether the plaintiff wishes to retract his version of events.

Captain Watson would suffer great prejudice if he is called upon to defend a claim based on facts which are being asserted for the first time more than five years after the incident occurred and the investigation was concluded. "In gauging prejudice, we consider, among other factors, whether an amendment would require the opponent to expend significant additional resources to conduct discovery and prepare for trial or significantly delay the resolution of the dispute." Ruotolo v. City of New York, 514 F.3d 184, 192 (2d Cir. 2008) (citations and internal quotation marks omitted). The plaintiff asserted in his grievance that his lawyer had called to preserve video images and also asserted that he had witnesses. Based on the plaintiff's description of events, Captain Watson may have also had witnesses and the video images may have supported his

w

position, but he has no meaningful opportunity to make such a determination now. In addition, Captain Watson has had no involvement in this case since June 5, 2018, and his memory and the memories of any witnesses have faded. Moreover, the defendants would have to expend significant resources to conduct discovery and prepare for a trial on the new claim.

**IV. Conclusion**

For the reasons set forth above, Plaintiff's Motion for Leave to File an Amended Complaint (ECF No. 80) is hereby DENIED.

It is so ordered.

Signed this 28th day of January 2022, at Hartford, Connecticut.

                                          /s/ AWT
                                       Alvin W. Thompson
                                   United States District Judge